# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DARRELL E. COOK,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 2:11cv4**
　　　　　　　　　　　　　　　　　　　　　　**(Judge Bailey)**

**UNITED STATES OF AMERICA,**
**FEDERAL BUREAU OF PRISONS[1],**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On January 18, 2011, the *pro se* plaintiff initiated this action against the above-named defendants pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. On January 31, 2011, the plaintiff was granted permission to proceed *in forma pauperis* and was not required to pay an initial partial filing fee. On March 4, 2011, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Sixty-day summonses were issued that same day.

On June 15, 2011, the defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. A Roseboro Notice was issued on June 16, 2011. The plaintiff was thereafter granted an extension of time until August 31, 2011 to respond to the Roseboro Notice. On August

---

[1] The undersigned recognizes that the plaintiff names as a defendant, "Federal of Prisons Bureau," which appears to be an erroneous reference to the BOP.

24, 2011, the plaintiff filed a Motion to Amend the Complaint which appears to be in response to procedural defects he believes were identified by the defendants in their Motion to Dismiss and/or for Summary Judgment. To date, the plaintiff has not filed a specific response to the defendants' Motion to Dismiss and/or Summary Judgment. Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment and the plaintiff's Motion to Amend.

## II. The Complaint

In the complaint, the plaintiff asserts that on July 29, 2009, he received minor burns while taking a shower in the Special Housing Unit at USP Hazelton. He further asserts that the Bureau of Prisons maintenance department controls the water temperature and that it cannot be adjusted by an inmate. The plaintiff asserts that prior to his injury, at least two correctional officers, Hetrick and Enrich, were aware of the water temperature.[2] Attached to the complaint are medical records showing that the plaintiff was treated for minor thermal burns on his left lower back and left buttock on July 29, 2009. In addition, the plaintiff alleges that he filed a FTCA that was received by the BOP on August 7, 2009. For relief, the plaintiff seeks $10,000 in damages.

## III. Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment

In support of their Motions, the defendants allege that:

1. The plaintiff's Bivens claim should be dismissed for failure to exhaust available administrative remedies;

2. The defendants were not deliberately indifferent to the medical needs of the plaintiff;

---

[2]The plaintiff did not, however, name either of these officers as defendants and neither were served with a summons.

2

3. The individual defendants have not been served;

4. The defendants are entitled to qualified immunity;

5. Any <u>Bivens</u> claims against the defendants in their official capacities are barred by sovereign immunity; and

6. The plaintiff's FTCA must be dismissed

### IV. <u>Plaintiff's Motion to Amend</u>

In apparent response to the defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, the plaintiff has filed a Request for Leave to File First Amended Complaint Pursuant to Rule 15 of the Federal Rules of Civil Procedure. (Dckt. 32) The plaintiff seeks to amend his complaint to correct "procedural deficiencies" in his complaint. In his proposed amended complaint, the plaintiff names as additional defendants Shawn Kelly, Steven Eirich, and Dale Hetrick, all of whom are or were correctional officers employed by the BOP at USP Hazelton. The plaintiff alleges that these three individual defendants and the United States of America, "in their individual and official capacity, were deliberately indifferent and negligent to [the plaintiff's] need for personal safety and to be free fro [sic] scalding hot water temperatures that burned him in the shower...." (Dckt. 32, p. 2). The plaintiff also alleges that he made several attempts at USP Hazelton, to no avail, to acquire the proper forms to exhaust his remedy utilizing the administrative process. The plaintiff maintains that upon arrival at USP Canaan, and through the advise of Counselor Louk at FCI Gilmer (while in transit), he began to exhaust his administrative remedies.

Federal Rule of Civil Procedure 15(a) provides that " a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party;

3

and leave shall be freely given when justice so requires." Here, as noted above, responsive pleadings had been filed before the plaintiff sought leave to amend. Accordingly, he can amend his complaint only with leave of the Court. Because the plaintiff adds no substantive claims, and two of the individual defendants he names have filed answers to the original complaint and provided affidavits even without being served, the undersigned has concluded that the plaintiff's motion to amend should be granted. However, as will be more fully discussed below, even considering his amended complaint, the plaintiff has failed to state a claim which would entitle him to relief under either the FTCA or Bivens.

## V. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

4

the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the

5

nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## VI. Analysis

### A. BIVENS

#### 1. The BOP and United States of America

A Bivens cause of action cannot be brought against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 486 (1994); Steele v. Federal Bureau of Prisons, 355 F.3d 1204 (10th Cir. 2003). Therefore, the Bureau of Prisons cannot be sued in a Bivens action. Furthermore, to the extent that the plaintiff attempts to name the United States as a defendant, the same is also improper because "any remedy under Bivens is against federal officials individually, not the federal government." Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996).

#### 2. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).[4]

---

[3] Id.

[4] In Woodford v. Ngo, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted

7

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F. Supp. 941, 943 (D. Md. 1997).

At no time did the plaintiff file an administrative remedy in which the temperature of the water in the SHU showers at USP Hazelton was raised as a subject or allegation. In addition, none of the administrative remedies filed by the plaintiff alleged that Shawn Kelly, Dale Hetrick, or Steven Eirich were aware of a problem with the water temperature in any shower at USP Hazelton. (dckt. 24-1).[5] Therefore, the plaintiff has not exhausted his administrative remedies with respect to any claim regarding the water temperature at USP Hazelton in general or the claims raised in his

---

federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 548 U.S. at 93-94 (emphasis added).

[5]The undersigned recognizes that the plaintiff filed a BP-8 on February 3, 2010, in which he complains that he was burned by extremely hot water and that the hot water issue had been directed to Officers Hetrick and Enrich on several occasions. (dckt. 1-1). However, that remedy was untimely, and it appears that the plaintiff did not pursue it beyond the BP8 level.

amended complaint against Kelly, Hetrick, or Eirich, in particular.

The undersigned is aware that the plaintiff alleges in his amended complaint that he made several attempts to acquire the proper forms to begin to exhaust his administrative remedies while he was housed at USP Hazelton, but was unsuccessful. However, given that the plaintiff was able to secure an Administrative Tort Claim form and file it with the BOP a mere nine days after the incident, it seems improbable that he could not obtain the necessary administrative remedy forms to exhaust his administrative remedies through the BOP grievance process. It appears more likely that the plaintiff believed that he need only file an Administrative Tort Claim, and did not consider the need or possibility of filing administrative grievances until so advised by Counselor Louk at FCI Gilmer.[6] Accordingly, the plaintiff's <u>Bivens</u> complaint should be dismissed with prejudice for failure to exhaust his administrative remedies because he is now time barred from doing so. However, even if the plaintiff had exhausted his administrative remedies, it is clear that the plaintiff's <u>Bivens</u> complaint still would be subject to dismissal for the reason discussed below.

### 3. <u>Deliberate Indifference</u>

The undersigned has viewed the plaintiff's complaint and amended complaint as stating a claim under the Eighth Amendment which prohibits punishments that "involve the unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976) (*quoting* <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)). Accordingly, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish</u>

---

[6]The plaintiff arrived at FCI Gilmer on August 31, 2009, and remained there until his transfer on December 4, 2009. (dckt. 24-2, p. 6). Despite alleging that Counselor Louk advised him tto file administrative grievances, and he remained at FCI Gilmer for more than three months, he did not begin the grievance process until two months after he left Gilmer and more than six months after the incident in question.

9

v. Levi, 753 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520 (1994) (Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'") (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard, and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). To satisfy the objective element of a prison condition claim, the plaintiff must show (1) that he has sustained a serious or significant mental or physical injury as a result of the challenged condition, see Stricklet v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); or (2) that the plaintiff's continued, unwilling exposure to the challenged condition creates an unreasonable risk of serious damage to his future health. See Helling v. McKinney, 509 U.S. 25, 31 (1993). In order to establish the subjective element of deliberate indifference an inmate must show that (1) the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; and (2) the prison official also must have drawn the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A sufficiently serious deprivation occurs when a "prison official's acts or omission . . . result in a denial of the minimal civilized measure of life's necessities." Id. at 298. In Farmer, the Supreme Court specifically rejected the notion that the common law definition of "reckless" in civil cases meets the deliberate indifference standard.

First, the undersigned notes that the medical records establish that the plaintiff suffered

minor thermal burns on his left upper back and left buttocks. He was treated with ibuprofen 800mg twice daily for seven days. In addition, he was given Silver Sulfadiazine Creme 1% to be applied in a small amount to the affected areas twice a day for seven days. These minor thermal burns do not appear to amount to either a serious or significant injury. However, even if they did, thus satisfying the objective element of an Eighth Amendment violation, it is clear that the plaintiff has not established the subjective element.

In his amended complaint, the plaintiff alleges that Shawn Kelly, Steven Eirich, and Dale Hetrick were responsible for his injuries resulting from scalding water. The plaintiff further alleges that all the other inmates in the SHU had acknowledged that the water was too hot. However, in his affidavit, Steven Eirich asserts that he has no independent recollection of the plaintiff and has no recollection of an inmate sustaining burns while in SHU shower. In addition, he asserts that he never received a complaint that the water temperature in the SHU at USP Hazelton was too warm or hot. He also indicates that he no recollection of any inmate sustaining burns from hot water in the SHU. However, he does recall that inmates complained from time to time that the water in the SHU was too cold. (dckt. 24-6). Similarly, in his affidavit, Dale Hetrick indicates that he has no independent recollection of the plaintiff and has no recollection of an inmate sustaining burns while in the SHU shower at USP Hazelton as the result of hot water. Moreover, to the best of his recollection, he was never aware of any issues or concerns regarding extremely hot water temperatures in the SHU showers. While he acknowledges that from time to time he received complaints from inmates that the water temperature in SHU showers was too cold or too warm, he relayed such complaints to the facilities maintenance personnel at USP Hazelton. (dckt. 24-6). Finally, both Steven Eirich and Dale Hetrick note that at no time did they have control over water

11

temperature in the SHU, nor were they involved in maintenance or repair of the plumbing associated with these showers.

Clearly, the plaintiff's general allegation that the individual defendants were responsible for his injuries and were aware that the water in the SHU showers was too hot cannot overcome the specific statements from the individual defendants "mentioned" in the original complaint. Inasmuch as there is no showing of any act or omission on the part of any SHU officer with respect to the SHU showers that would rise to the level of a constitutional violations, the plaintiff's Bivens claim fails.

## B. FTCA

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671-2680.

Pursuant to the FTCA, the United State is liable in the same manner and to the same extent as a private individual under like circumstances in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 2674 and 1346(b)(1); Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). In West Virginia, in every action for damages resulting from injuries to the plaintiff alleged to have been inflicted by the negligence of the defendant, the plaintiff must establish three elements: (1) a duty which the defendant owes to him; (2) a negligent breach of that duty; and (3) injuries received thereby, resulting proximately from the breach of that duty. Webb

12

v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W.Va. 1939).

The duty of care of owed by the BOP to prisoners is fixed by statute and specifically requires that the BOP provide for the safekeeping, care, subsistence and protection of all prisoners. See 18 U.S.C. § 4402; United States v. Munitz, 374 U.S. 150 (1963). In West Virginia, this duty has been interpreted to be one of reasonable care, similar to the duty landowners in West Virginia owe to invitees. See McNeal v. United States, 979 F. Supp. 431 (N.D. W.Va. 1997) (explaining that under West Virginia law, the duty of care owed to inmates by the BOP is one of reasonable care); see also Burdette v. Burdette, 127 S.E.2d 249 (W. Va. 1962) (finding that a landowner owes to an invitee the duty to exercise ordinary care in keeping and maintaining his premises in a reasonably safe condition).

The defendants have tendered an exhibit from Shawn Kelly, who has been the plumbing supervisor at USP Hazelton since 2004. His affidavit establishes that the showers in the SHU employ a thermostatic water controller. This system, which combines hot and cold water in the pipes and then dispenses the water between 105º and 115º Fahrenheit ("F"), utilizes a mixing/tempering valve to ensure that the water dispensed during the shower is within the appropriate range. The thermostatic valve measures the temperature of the water being dispensed, and if the water is either too hot (above 115º F) or too cool (below 105º F) a piston within the valve shifts to permit either more cold or more hot water through the valve to correct the temperature fluctuation. BOP Program Statement 4200.10 sets the bottom range of shower temperatures at 105º F. The high-end of the temperature range for the showers is set at 115º F., which is 5 degrees lower than 120º standard established by the American Correctional Association. (dckt. 24-3).

Mr. Kelly's affidavit also establishes that the valve used at USP Hazelton is a "fail-cold"

valve which means that is the valve fails (i.e., the temperature goes above 115º) only cold water is allowed through the pipes, and the hot water shuts off completely. As standard maintenance, the temperature of the water in the SHU showers is measured at least once each week. Since 2004, the water in the SHU showers has never measured above 115ºF during maintenance checks. Additionally, Mr. Kelly avers that a review of the work orders pertaining to plumbing issues in the SHU indicate that from 2007 through 2010, there were no work orders placed regarding the temperature of the water being too hot. In fact, the only work orders placed regarding the temperature of the water in the showers indicated that the hot water was not working at all. (dckt. 24-3).

Accordingly, even though it would appear that the temperature in the shower used by the plaintiff, on July 29, 2009, was sufficiently hot as to cause him minor thermal burns, it is equally apparent that the BOP staff at USP Hazelton did not breach its duty to exercise reasonable care with respect to the shower in the SHU. What is clear is that the BOP uses more than reasonable measures to ensure that such occurrences do not occur. Accordingly, the plaintiff's FTCA is due to be dismissed.

## VII. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss, on in the Alternative, for Summary Judgment (Doc. 22) be **GRANTED**; the plaintiff's Motion to Amend Complaint (Doc. 32) be **GRANTED**; and the plaintiff's complaint/amended complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this report and recommendation,

any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED**: December 22, 2011

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE